**FARMERS ELEVATOR SERVICE CO. v. HOGAN et al.**

No. 5125.

United States District Court W. D. Missouri, W. D.
Aug. 17, 1949.

See also, D.C., 8 F.R.D. 230.

J. Robertson Clagett and T. J. Wheatley (of Kemp, Koontz, Clagett & Norquist), Kansas City, Mo., and Alan Loth, Fort Dodge, Iowa, for plaintiff.

John L. Sheridan and Donald E. Raymond (of Pew, Taylor, Welch & Sheridan), Kansas City, Mo., for defendants.

REEVES, Chief Judge.

This is an action upon three separate and distinct contracts involving the purchase and sale of feed. The first contract was dated January 7, 1947, and involved the purchase and sale of 90 ton of shorts at $40 per ton f. o. b. Kansas City, Missouri, for February, 1947 shipment; 90 ton of shorts at $40.75 per ton for March, 1947 shipment; and 90 ton of shorts at $40.75 per ton for April shipment. The second contract was dated February 17, 1947 and provided for the purchase and sale of 10 ton of wheat bran at $36.10 per ton and 20 ton of shorts at $42.10 per ton, for June shipment, and for an additional 10 tons of wheat bran and 20 ton of shorts at the same prices for July shipment, and likewise for 30 ton of grey shorts at $43.85 per ton for shipment "on or about May 1, 1947." And the third contract,

dated February 24, 1947, was for the purchase and sale of 20 ton of shorts at a price of $43.50 per ton, 10 ton of bran at $41.00, all for shipment about March 24, 1947.

According to the averments of the complaint, a part of these shipments was made, but it is alleged the defendant was in default on the first contract dated January 7, 1947, for 210 tons of shorts. In other words, the defendant failed to make shipment of 30 ton at $40 per ton, and both of the shipments at the increased price of $40.75 per ton. There were to be shipped 180 ton at the last-named price, viz., at $40.75 per ton. Both of the contracts of February 17th and February 24th were in default.

The plaintiff, alleging breaches of said contracts, asks for a judgment for the difference between the market prices of shorts on September 17, 1947 and the contract prices in the aggregate sum of $8212.50.

On the second contract it seeks damages upon the same theory in the sum of $3026.00, and on the last contract it claims $847.50 likewise with interest from and after September 17, 1947. It was on September 17, 1947, that the plaintiff made final demand for fulfillment of the contracts and then declared breaches of said contracts.

The answer of defendant substantially sets forth that the contracts set up by the plaintiff "through mutual agreement and understanding of the parties" were "canceled and made of no force and effect," and, "that all liability of the parties thereunder thereby ceased and terminated." It made the further defense that under the terms of the contracts between the parties it was the right of plaintiff, because of such default, either to cancel the contracts or to terminate them or the portions thereof in default, and that it was the duty of the plaintiff to have given "preliminary written notice of the intention to cancel or terminate by registered mail addressed to seller's main office." The further defense was made that the plaintiff had failed and neglected to give proper shipping instructions. In relation to this provision of the contract relating to cancellation and ter-

mination it is the contention of the plaintiff that the confirmation of the several orders amounted to a novation and that this provision of the contract was a nullity.

■ 1. There is no controversy but that the contracts were not carried out, as alleged by the plaintiff, and that if entitled to recover, it would be entitled to recover in accordance with the averments of its complaint, which recovery would be an aggregate of $12,086, with interest from September 17, 1947, unless, of course, there was a rescission and cancellation of the contract. On the latter question there was no evidence that the agreements between the parties were mutually canceled and annulled. The contracts were entered into through the intermediation of a broker known as the Rocky Mountain Grain and Commission Company, and the evidence was that after the contracts matured both the plaintiff, and the commission company as the agent of both parties, continually urged upon defendants the necessity of meeting their obligations under the contract. They did not do so, and the plaintiff is entitled to judgment, unless it failed to give the notice to which defendants say they were entitled and as set forth in the original contract of purchase, and unless the plaintiff failed to give proper shipping instructions.

2. An examination of the portion of the contract relied upon by defendants shows that, in case of default, relating to notice, "Buyer may by written notice sent by registered mail to Seller at Seller's main office: 1) cancel the contract; or 2) terminate the contract as to the portion thereof in default, * * *."

■ It is then provided that, under the last alternative, the buyer may recover, as damages, the exact amounts claimed by plaintiff in this case. As indicated, these are alternative remedies, and remedies that the plaintiff may have followed at its option but it was not deprived of its common-law right to sue for breaches of the contract. The remedies set out in the contract were not exclusive but were merely permissive. 3. There was no evidence

of failure on the part of plaintiff to give proper shipping instructions.

In view of the above, the plaintiff is entitled to recover on the three counts of its complaint as prayed, and judgment will be entered accordingly.